UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LUMBERMENS MUTUAL CASUALTY COMPANY,

                              Plaintiff(s),                    **ORDER**
                                                                               CV 06-3881(TCP)(WDW)

     -against-

ALAN DINOW, NORMAN HINERFELD,
TERMACON ENVIRO SYSTEMS, INC.,
THERMACON INDUSTRIES, INC., and
THERMACON PROPERTIES, INC.,
                                Defendant(s).
------------------------------------------------------------------X
**WALL, Magistrate Judge:**

Before the undersigned is a motion[1] by the plaintiff that seeks entry of default against defendants Norman Hinerfeld and Alan Dinow, or, in the alternative, an order directing Hinerfeld to answer by a date certain, or an order granting an extension of time to serve the summons and complaint on Dinow and defendant Thermacon Enviro Systems, Inc. DE[21]. The court notes, as a threshold issue, that a motion for default must be made to the District Judge, not the Magistrate Judge and no action can be taken on that prong of the motion. Further, Mr. Hinerfeld has filed an answer and the motion is moot as to him. The remaining prong of the motion seeks an extension of time for service on Dinow and Thermacon Enviro Systems pursuant to Federal Rule of Civil Procedure 4(m). In his opposition to the motion, Alan Dinow makes a cross motion to dismiss, also pursuant to Federal Rule 4(m). DE[30]. For the reasons set forth in this Order, the plaintiff's motion is granted as to the extension of time to serve Dinow and Thermacon Enviro Systems, to the extent that they are granted a 30 day, but not a 60 day

---

[1]The motion, which is set forth in letter form, does not comply with my Individual or the Local Rules. Letter motions must be limited to three pages, without replies. A movant must choose between a letter motion and a motion on notice and cannot use some features of each. Any future submissions that do not adhere to these requirements will be stricken.

extension, and the motion is denied in all other regards, as explained. Mr. Dinow's motion is denied[2].

**BACKGROUND**

The plaintiff, Lumbermens Mutual, is a surety that issued construction bonds at the request of defendant Thermacon Enviro Systems. Before the bonds were issued, Lumbermens alleges that it obtained a General Indemnity Agreement from defendants Thermacon Enviro, Thermacon Industries, Thermacon Properties, and Thermacon's principals/owners, Alan Dinow and Norman Hinerfeld. *See* DE[6]; *see also* Complaint DE[1]. One of the bonds named Thermacon Enviro as principal and Durr Mechanical as obligee. Durr brought suit against Thermacon and Lumbermens in New York State court, claiming that Thermacon had defaulted on its contractual obligations. The lawsuit was settled, with Lumbermens allegedly paying the settlement to Durr without objection by Thermacon, Dinow or Hinerfeld. The current lawsuit was brought to enforce Lumbermens' asserted right to indemnity in connection with the Durr settlement payment and a smaller contract. The plaintiff is now, and throughout this litigation has been, represented by Dreifuss Bonacci & Parker, LLP. ("DBP").

The procedural history of this case relevant to the service of the complaint on Dinow and Thermacon Enviro is set forth in the Status Report letter filed by the plaintiff in January 2009, the responsive letter from attorney Mark Cortegiano, who now represents defendant Hinerfeld (DE[6 & 7]), and in the papers in support of and opposition to the motion and cross-motion. *See*

---

[2]The court notes that a motion to dismiss, like a motion for default, should be made to the District Judge, since it seeks dispositive relief. Here, however, the motion is being denied of necessity since the motion for an extension is granted and the two forms of relief are mutually exclusive at this point. If Mr. Dinow wishes to appeal this order to Judge Platt he may do so.

DE [21, 29 & 30]. What the current motions boil down to, in regard to Alan Dinow, is that the plaintiff claims it tried repeatedly to personally serve Dinow with the summons and complaint, but was unable to complete that service because Dinow lives in a gated community and was reportedly not at home at the three times when service was attempted. DE[21] at 4; Dickstein Aff., Ex. G. The process server's Affidavit of Due Diligence makes clear that personal service on Dinow was never effected.

The plaintiff states that, despite the failure of personal service, it was "led to believe" that lawyers representing Dinow had agreed to accept service on his behalf in 2006. *Id.*, Dickstein Aff., DE[21], Exs. H, I, J, K. Mr. Dinow, in his opposition to the motion, states that in August 2006, plaintiff's counsel, at that time Gary Strong of DBP, sent a copy of the Summons and Complaint to attorney Paul Ostensen, who had represented Dinow in related litigation, for service on Dinow. That claim finds support in a copy of letter from Mr. Ostensen to Gary Strong, dated August 26, 2006. Dickstein Aff., DE[21], Ex. H. In the letter, Mr. Ostensen confirms an earlier discussion during which Mr. Strong "agreed that the defendants' time to answer or move with respect to the complaint in this action is extended to and including September 22, 2006." The letter is captioned as being in reference to *Lumbermens Mutual Casualty Company v. Alan Dinow, et al.* The court finds that the letter is strong evidence in support of Lumbermen's claim that a copy of the complaint was served on Ostensen for service on Dinow. Dinow, however, denies that it was good service.

He claims that Ostensen had not been retained as his counsel at that time and had no authority to accept service on his behalf. DE[30] at 3, ¶5. In September 2006, Dinow reports, he and Hinerfeld met with Mr. Ostensen's law firm, Mintz & Gold, and it was determined that the

3

firm would not represent them in the instant action. *Id.*, ¶6. In an email dated September 19, 2006, Mr. Ostensen told Gary Strong that he would not be representing Hinerfeld and Dinow. *Id.*, Ex. C. The court notes, however, that the letter from Mr. Ostensen to Mr. Strong regarding the complaint was dated August 24, 2006, prior to Dinow's decision that Ostensen would not represent him.

Mr. Hinerfeld subsequently retained Mark Cortegiano to represent him, but Dinow claims that he did not. Dinow states that he had a discussion with Mr. Cortegiano about possible representation if Dinow was ever properly served, either with the original complaint or with an amended complaint that Gary Strong had said the plaintiff would be filing and maintains that he has never been served with either the original or an amended complaint. *Id.*, ¶¶9-10. In a letter to the court in response to the plaintiff's Status letter in January 2009, Mr. Cortegiano reports that he was retained by both Hinerfeld and Dinow in September 2006, which he reported to plaintiff's then-counsel, Gary Strong. Cortegiano asked for additional time to answer, and sent a proposed stipulation extending the time to answer. DE[7] at 1. He reports that it was never executed, and that, to the best of his recollection, Mr. Strong told him that he didn't sign the stipulation because he planned to file an amended complaint. Strong sent Cortegiano a letter dated October 9, 2006 that "confirmed" that the plaintiff would file an amended complaint and that Cortegiano would accept service on behalf of all defendants. *Id.* at 2, Ex. 1. Cortegiano states that the letter was incorrect in suggesting that he ever represented the corporate defendants. It was not, apparently, incorrect as to his representation of Dinow and Hinerfeld. Mr. Cortegiano's request for an extension of time to answer on behalf of Dinow and Hinerfeld further supports the plaintiff's contention that a complaint had been served on attorneys for Dinow.

4

In their status letter of January 29, DBP reports that Gary Strong left DBP, although he still appears in the docket as an attorney of record for the plaintiff. It is not clear when Mr. Strong left the firm, whether in 2006 or just recently. In any event, the plaintiff notes that "it appears that counsel did not follow up with each other concerning the matter for some time," and that neither an amended complaint nor answers were filed or served. DE[6] at 2. The plaintiff also concedes, quite appropriately, that "this lawsuit might well have been handled more efficiently and deliberately." *Id.* The plaintiff now seeks an order pursuant to Rule 4(m) extending the time for service on Dinow and Thermacon Enviro Systems of the Summons and Complaint and Dinow seeks dismissal of the action for failure to timely serve him.

## DISCUSSION

Rule 4(m) "governs both (1) the dismissal of actions for untimely service of process and (2) extensions of the time in which service may be effected." *Zapata v. City of New York,* 502 F.3d 192, 195 (2d Cir. 2007). The Rule provides that if a defendant has not been served within 120 days after the complaint is filed, "the court – on motion or on its own after notice to the plaintiff – must dismiss the actions without prejudice against that defendant or order that service be made within a specified time." If the plaintiff shows good cause for the failure, "the court must extend the time for service for an appropriate period." Here, Lumbermens argues that good cause for its failure to serve Dinow is demonstrated by its diligent attempt to serve Dinow personally, both as an individual and as agent for Thermacon Enviro Systems and its belief that lawyers had agreed to accept service on Dinow's behalf.

The court agrees that the record supports a finding that Lumbermens had good reason in 2006 to believe that the complaint had been served on Dinow through his attorneys, Paul

Ostensen and Mark Cortegiano. The court cannot, however, find that there was actually good service of the complaint, because such a finding would require a full hearing, with testimony from all involved. Nor can the court find that there is good cause for an extension. "Good cause" is generally found only in "exceptional circumstances" where the plaintiff's failure to make timely service was the result of circumstances beyond his control. *Myers v. Secretary of the Department of the Treasury,* 173 F.R.D. 44, 46 (E.D.N.Y. 1997) (Platt, D.J.) (citing *National Union Fire Ins. Co. v. Sun,* 1994 WL 463009, at *3 (S.D.N.Y. Aug. 25, 1994)). And, an attorney's "inadvertence, neglect, or mistake does not suffice to establish good cause for failure to make proper service within 120 days." *Id.* at 47 (citing *McGregor v. United States,* 933 F.2d 156, 160 (2d Cir. 1991)). Here, whatever the state of affairs in Fall 2006, the plaintiff cannot avoid the fact that it did nothing from that time, when the confusion about Dinow's counsel and whether the plaintiff would file an amended complaint began, until January 2009, more than two years later, when it finally filed a status report that had been ordered in August 2008. These are not "exceptional circumstances," beyond the plaintiff's control, but instead represent an attorney's "inadvertence, neglect or mistake." Thus, the court cannot find that good cause for the delay in service exists.

Good cause is not, however, required for an extension of time pursuant to Rule 4(m). A court can exercise its discretion in granting an extension without good cause, rather than dismissing the case for improper service, considering the following factors: "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by granting

plaintiff's request for relief from the provision." *Kalra v. City of New York,* 2009 WL 857391, *3 (S.D.N.Y. Mar. 31, 2009).

With respect to the first factor, "courts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis." *Beauvoir v. United States Secret Service,* 234 F.R.D. 55, 58 (E.D.N.Y. 2006)(internal citations and quotation marks omitted). Here, the plaintiff does not state that the statute of limitations has run, and the court does not know whether it has or has not. Instead, Lumbermens argues that Rule 41 is of concern. Rule 41 issues are not among those considered in a Rule 4(m) analysis and thus this factor does not weigh in the plaintiff's favor. The defendants may raise a Rule 41 argument if one is viable when they answer or move to dismiss the complaint.

The second factor weighs heavily in the plaintiff's favor. Mr. Dinow had full notice of the issues underlying the complaint , indeed had been involved in litigating them in other lawsuits, and was well aware of the existence of this lawsuit, consulting with two different attorneys about the possibility of their representing him in it. He does not deny such notice in his opposition or his motion to dismiss. In this regard, the "core function" of service, that is, to supply notice of the legal action, has been satisfied. *Myers,* 173 F.R.D. at 48 (citing *Henderson v. United States,* 116 S. Ct. 1638, 1647 (1996)).

The third factor, whether the defendant attempted to conceal the defect in service, does not weigh in the plaintiff's or Dinow's favor. The first time that Dinow had to address the issue of whether he had been served was when the defendants made this motion in June 2009 and raised the argument about service on his former attorney. He timely responded and has not attempted to conceal the alleged defects of service.

The fourth factor, whether Dinow will be prejudiced by an extension, weighs in the plaintiff's favor. As noted earlier, some of the issues in this action have already been litigated or raised in related proceedings, and Dinow has not argued that evidence is stale or witnesses unavailable. He will be burdened with the obligation to defend this lawsuit if the extension is granted, but that does not rise to the level of prejudice necessary to tip the balance of this factor in his favor.

Considering these factors, the court concludes that the facts of this case justify the exercise of its discretion in the plaintiff's favor, especially in view of the well-settled precept that "litigation disputes be resolved on their merits." *Myers,* 173 F.R.D. at 48-49 (citations omitted). For the same reasons, Dinow's cross-motion to dismiss must be denied. Thus, Lumberman's has 30 days (but not the 60 days it requested) from the date of this Order to serve Dinow in compliance with Rule 4 of the Federal Rules.

The corporate defendant, Thermacon Enviro Systems, has not appeared or opposed the motion. As set forth in my order of 6/24/09, granting Mr. Dinow an extension of time to oppose, Thermacon Enviro, a corporation, cannot appear pro se in this litigation, nor can Mr. Dinow, who is not, to the court's knowledge, an attorney, appear on the corporation's behalf. This motion is granted as unopposed and on the merits as to Thermacon Enviro, and the 30 day extension of time for service applies to it as well as to Dinow.

A copy of this order is being mailed by the court to Mr. Dinow at 55 Eagle Chase, Woodbury, NY 11797 and faxed to him at the number he provided, 516-802-3766. The plaintiff is directed to serve a copy of the order on defendant Thermacon Enviro Systems upon receipt, as its address is unknown to the court.

Dated: Central Islip, New York  **SO ORDERED:**
August 6, 2009

    /s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge